UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARY SUE BUNDY,

        Plaintiff,                      Case Number 20-10254
                                             Honorable David M. Lawson
v.                                          Magistrate Judge Patricia T. Morris

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
_____/

**OPINION AND ORDER ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, AFFIRMING THE FINDINGS OF THE COMMISSIONER, AND DISMISSING COMPLAINT**

Plaintiff Mary Sue Bundy, a 40-year-old woman, says that she cannot work because of a variety of physical and mental disabilities. Her applications for disability insurance benefits and supplemental security income (SSI) under Title II and Title XVI of the Social Security Act were denied after an administrative hearing, and she filed this case seeking review of the Commissioner's decision. The case was referred to United States Magistrate Judge Patricia T. Morris under 28 U.S.C. § 636(b)(1)(B) and E.D. Mich. LR 72.1(b)(3). Thereafter, the plaintiff filed a motion for summary judgment to reverse the decision of the Commissioner and remand the case for an award of benefits or for further consideration by the administrative law judge. The defendant filed a motion for summary judgment requesting affirmance of the decision of the Commissioner. Magistrate Judge Morris filed a report on January 29, 2021, recommending that the defendant's motion for summary judgment be granted, the plaintiff's motion for summary

judgment be denied, and the decision of the Commissioner be affirmed. The plaintiff filed timely objections, and the defendant filed a response. The matter is now before the Court.

Bundy, who is now 40 years old, filed her applications for disability and SSI benefits on June 23, 2017, when she was 36. She received a GED and previously worked as an assembler, waitress, and bartender. She alleges that she is disabled as a result of her arthritis, chronic pain syndrome, history of epigastric pain, depression, and anxiety. In her applications for benefits, the plaintiff alleged a disability onset date of May 30, 2017.

Bundy's applications for disability and SSI benefits were denied initially on October 20, 2017. She timely filed a request for an administrative hearing, and on December 13, 2018, she appeared before administrative law judge (ALJ) Jennifer Overstreet. On January 25, 2019, ALJ Overstreet issued a written decision in which she found that Bundy was not disabled. On December 3, 2019, the Appeals Council denied Bundy's request for review of the ALJ's decision. On January 31, 2020, the plaintiff filed her complaint seeking judicial review of the denial of her requested benefits.

ALJ Overstreet determined that Bundy was not disabled by applying the five-step sequential analysis prescribed by the Secretary of Social Security in 20 C.F.R. §§ 404.1520, 416.920. At step one of the analysis, ALJ Overstreet found that Bundy had not engaged in substantial gainful activity since May 30, 2017. At step two, she found that Bundy suffered from rheumatoid arthritis, inflammatory arthritis, chronic pain syndrome, history of epigastric pain, depression, and anxiety — impairments that were "severe" within the meaning of the Social Security Act. ALJ Overstreet then determined that Bundy's other impairments — restless leg

syndrome and hypertension — were not severe.  At step three, ALJ Overstreet determined that none of the severe impairments, alone or in combination, met or equaled a listing in the regulations.

Before proceeding further, the ALJ determined that Bundy retained the functional capacity (RFC) to perform light work as defined in 20 CFR 404.1567(b), with certain limitations.  The ALJ determined that Bundy (1) only occasionally can climb ramps and stairs, kneel, crouch, and crawl, (2) frequently can balance, (3) never can climb ladders, ropes, or scaffolds, (4) should avoid workplace hazards such as unprotected heights and moving mechanical parts, (5) should avoid working in conditions of extreme heat, cold, humidity, or wetness, (6) should have a sit-stand option allowing her to change positions every 30 minutes for one or two minutes, within the area immediately near her workstation, (7) is limited to simple tasks in a routine work setting, but not at a production rate pace (e.g., she cannot work on an assembly line), and (8) is limited to occasional interaction with supervisors, coworkers, and the public.

At step four of the analysis, the ALJ found that the plaintiff is unable to perform her past relevant work as a production assembler, waitress, or bartender, which the ALJ characterized as being semi-skilled jobs with light to medium levels of exertion.  At step five, the ALJ found that, based on Bundy's RFC, and relying on the testimony of a vocational expert, the plaintiff could perform the duties of representative occupations including office helper (over 70,000 positions in the national economy), merchandise marker (over 80,000 positions in the national economy), and sorter (over 70,000 positions in the national economy).   Based on those findings — and noting that, if the plaintiff had the capacity to perform a full range of light work, then a "not disabled"

finding would have been mandated by Medical Vocational Rule 202.21 — the ALJ concluded that Bundy was not disabled within the meaning of the Social Security Act.

In her motion for summary judgment, Bundy raised two arguments. First, she argued that the ALJ's RFC finding was not supported by substantial evidence because the ALJ failed properly to weigh the opinion of the plaintiff's treating physician, Dr. Kevin Bohnsack. Second, she argued that the RFC finding also was unsupported because the ALJ failed to afford proper weight to another treating physician, Dr. Luven Tejero.

The magistrate judge rejected those arguments. She found that the ALJ drew on several sources in determining Bundy's RFC and provided a thorough rationale for declining to adopt many of the medical opinions in their entirety and instead according partial weight to the various consultative and non-examining sources. Judge Morris noted that the plaintiff's arguments did not specifically invoke the treating source rule, and she did not contend that an improper weight was assigned to the treating doctors' opinions, but instead she argued that the ALJ failed to articulate sufficiently the reasons for giving the weight that was afforded to those opinions.

The plaintiff filed one objection to the magistrate judge's report and recommendation. The filing of timely objections to a report and recommendation requires the court to "make a de novo determination of those portions of the report or specified findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also United States v. Raddatz*, 447 U.S. 667 (1980); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). This *de novo* review requires the court to re-examine all of the relevant evidence previously reviewed by the magistrate judge in order to

determine whether the recommendation should be accepted, rejected, or modified in whole or in part.  28 U.S.C. § 636(b)(1).

"The filing of objections provides the district court with the opportunity to consider the specific contentions of the parties and to correct any errors immediately," *Walters*, 638 F.2d at 950, enabling the court "to focus attention on those issues-factual and legal-that are at the heart of the parties' dispute," *Thomas v. Arn*, 474 U.S. 140, 147 (1985).  As a result, "'[o]nly those specific objections to the magistrate's report made to the district court will be preserved for appellate review; making some objections but failing to raise others will not preserve all the objections a party may have.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 837 (6th Cir. 2006) (quoting *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987)).

The plaintiff contends that the magistrate judge erred in her review of the ALJ's RFC findings, because she "impermissibly re-weighed the evidence of record, failed to address [the plaintiff's] contentions, misapplied the regulations, and ignored the emerging case law in response to the new regulations."  The plaintiff argues that both the ALJ and the MJ glossed over medical notes from the University of Michigan, which stated a diagnosis of rheumatoid arthritis, disregarding the objective physical observations of joint tenderness and other physical symptoms that were recorded.  The plaintiff also asserts that the ALJ's decision incorrectly cited a page of the medical notes as relating to her arthritis treatment, when the notes cited actually related to treatment for dyspnea.  The plaintiff also argues that the ALJ and the MJ disregarded medical notes stating that the plaintiff suffered "intolerable side effects" from the medications that were prescribed for her arthritis.  The plaintiff further argues that the fact that the MJ had to resort to

conducting her "own review of the record" when analyzing Dr. Tejero's opinion bolsters her position that the ALJ did not adequately consider that opinion, because no discussion about any treatment of the plaintiff's mental limitations was included anywhere in the ALJ's ruling. The plaintiff contends that the failure adequately to discuss Dr. Tejero's opinion could not be excused on the basis of information in the record that the ALJ "could have relied on," because the decision must be supported by substantial evidence that actually is recited in the ALJ's findings. The plaintiff further argues that the MJ adopted "strange" and "circular" reasoning by concluding that, even though the decision not to include any mental limitations recognized by Dr. Tejero was not explained by the ALJ, the failure to articulate any reasoning for ignoring the opinion was "harmless." Finally, the plaintiff argues that the MJ misapplied the extant regulations on consideration of medical sources by disregarding the fact that, even under the revised criteria of 20 C.F.R. §§ 404.1520c(a), the ALJ still must articulate reasons for her treatment of a medical opinion, even though she no longer is required to assign medical opinions particular weights according to any predetermined categorical hierarchy.

The ALJ applied the current regulations when considering the opinions of the plaintiff's treating physicians. As the magistrate judge explained, those regulations relaxed the requirements of the former provisions, which created a hierarchy of medical sources and commanded a sliding scale of required acceptance at the administrative level. *See* 20 C.F.R. § 404.1527(c)(2); *Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992). Now, the ALJ is required to consider all medical sources on an equal footing, 20 C.F.R. §§ 404.1520c(a), assessing medical opinions according to their supportability (in light of "objective medical evidence") and

consistency (comparing the opinion to "evidence from other medical sources and nonmedical sources"), the relationship of the medical source with the claimant, the medical source's specialization, and other factors that "tend to support or contradict a medical opinion," 20 C.F.R. §§ 404.1520c(c)(1)-(5). The ALJ wrote that she considered the opinions of Dr. Bohnsack in accordance with those regulations and decided to give them "little weight" because they were inconsistent with other medical evidence, which the ALJ discussed.

The plaintiff complains that this level of articulation is insufficient. However, the ALJ weighed the evidence, rejecting findings that were consistent with the plaintiff's complaints in favor of other evidence that contradicted them, explaining her choices. To upset those choices, as the plaintiff urges here, would be to reweigh the evidence, which the Court may not do in its limited judicial review function. 42 U.S.C. § 405(g); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (holding that the Court "may not try the case *de novo,* nor resolve conflicts in evidence, nor decide questions of credibility").

Contrary to the plaintiff's assertion, the ALJ did discuss (and therefore must have considered) the objective evidence from the University of Michigan Medical Center and Dr. Marder. Considering both favorable and unfavorable medical evidence is the proper role of the ALJ, with which courts cannot interfere if her ultimate conclusion is supported by substantial evidence — a low bar, consisting of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, --- U.S. ---, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison*, 305 U.S. 197, 229 (1938)); *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

The magistrate judge in turn discussed the ALJ's evidence weighing, pointing out the favorable and unfavorable evidence she considered. The plaintiff criticizes that approach as merely adopting and repeating the ALJ's errors and, like the ALJ, cherry picking the evidence. But that is not what the record shows. There is "little indication that the ALJ improperly cherry picked evidence; the same process can be described more neutrally as weighing the evidence." *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 284 (6th Cir. 2009). The magistrate judge concluded that the ALJ gave fair consideration to all the evidence, and the Court agrees. "[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Simons v. Barnhart*, 114 F. App'x 727, 733 (6th Cir. 2004) (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

Nor did the ALJ violate the articulation standards of the current regulations merely because her determination of the RFC did not include the limitations recommended by Dr. Tejero that were partially consistent with other medical source opinions. An ALJ is "not required to articulate how [she] considered each medical opinion . . . from one medical source individually." 20 C.F.R. § 404.1520c(b)(1). Here, the ALJ acknowledged the opinion and indicated how persuasive she found it, giving it only "some weight." That was sufficient. *See Callahan v. Comm'r of Soc. Sec.*, No. 17-14069, 2019 WL 1375516, at *2 (E.D. Mich. Mar. 27, 2019) (rejecting "the principle" that "an ALJ must explain why she did not include a doctor's opinions when formulating her RFC," even where the ALJ "gave great weight to the physician's opinion").

Here, the ALJ described the evidence and articulated the bases of her decision in sufficient detail to allow the Court to discharge its limited review function of determining whether the decision is "supported by substantial evidence." 42 U.S.C. § 405(g).

After a *de novo* review of the entire record and the materials submitted by the parties, the Court concludes that the magistrate judge properly reviewed the administrative record and applied the correct law in reaching her conclusion. The Court has considered plaintiff Bundy's objection to the report and recommendation and finds it to lack merit.

Accordingly, it is **ORDERED** that the magistrate judge's report and recommendation (ECF No. 17) is **ADOPTED**.

It is further **ORDERED** that the plaintiff's objection (ECF No. 18) is **OVERRULED**.

It is further **ORDERED** that the plaintiff's motion for summary judgment (ECF No. 13) is **DENIED**.

It is further **ORDERED** that the defendant's motion for summary judgment (ECF No. 15) is **GRANTED**. The findings of the Commissioner are **AFFIRMED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated: March 31, 2021